1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEVONTE BERNARD HARRIS,

Plaintiff,

v.

E. MUNOZ, J. CERDA,

Defendants.

Case No.  1:21-cv-01372-HBK (PC)

FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

(Doc. No.  2)

FOURTEEN-DAY OBJECTION PERIOD

Plaintiff Devonte Bernard Harris initiated this action as a state prisoner proceeding *pro se* by filing a civil rights complaint under 42 U.S.C. § 1983 on September 14, 2021.  (Doc. No. 1). Plaintiff concurrently moved for a temporary restraining order or a preliminary injunction.  (Doc. No. 2).  Plaintiff files his declaration in support of his motion *sub judice*.  (*Id.* at 9-14).  On October 8, 2021, Plaintiff paid the $402.00 filing fee.  (*See* Receipt No. CAE1000049286).

For the reasons discussed below, the undersigned recommends that the district court deny Plaintiff's motion.

## I.  BACKGROUND AND ALLEGED FACTS

### A.  Complaint

At this stage of the proceedings, the Court accepts the allegations in the Complaint as true. The Complaint alleges a First Amendment retaliation claim against two correctional officials at CSP-Corcoran: E. Munoz, correctional officer, and J. Cerda, a sergeant, in their official and

1  individual capacities. (Doc. No. 1 at 1-3). The incident giving rise to the cause of action

2  occurred on November 2, 2020, after Plaintiff had been returned to his cell from suicide watch.

3  (*Id.* at 4). Plaintiff asked Munoz to submit a canteen slip on his behalf, but Munoz refused and

4  told him to submit it through the mail. (*Id.*). The instructions on the form specifically state not to

5  submit the canteen form in the mail so Plaintiff knocked on his cell door with the state-issued cup

6  to get another correctional officer's attention. (*Id.*). A different guard came and turned in

7  Plaintiff's canteen slip. (*Id.* at 5). The next day, on November 3, 2020, when Munoz was

8  performing a security check in Plaintiff's area, he "knocked the sensor baton against his cell door

9  window and cracked the window." (*Id.*).

10      Over the next few weeks, Plaintiff requested maintenance to fix his window and contacted

11  someone with the last name Cerda. (*Id.* at 5). Cerda told Plaintiff that Munoz took responsibility

12  for the broken window, but the window would not be repaired because only the outer layer of the

13  window was cracked. (*Id.* at 5-6). Plaintiff believed Cerda was "covering up" for Munoz. (*Id.* at

14  6). About three weeks later, Plaintiff filed an inmate grievance appeal regarding Cerda's cover-

15  up of Munoz's actions. (*Id.*).

16      Plaintiff tested positive for Covid-19 on November 26, 2021 and was moved to an

17  isolation building. (*Id*). Plaintiff claims Munoz and Cerda learned about Plaintiff's appeal

18  grievances around this time. (*Id.*). Following his return from isolation, around December 15,

19  2021,[1] Plaintiff claims Munoz and Cerda moved Plaintiff's cell assignment to a different cell in a

20  "reclusive corner" of the correctional facility and acknowledged to him that they did so "as a

21  result of [plaintiff's] administrative appeal." (*Id.* at 6-7). When Plaintiff arrived in his new cell,

22  he noticed that many of the photographs of his friends and family, which previously hung in his

23  old cell, "were ruined." (*Id.* at 7). Munoz "admitted to the sabotage." (*Id.*)

24      These incidents caused Plaintiff's anxiety and suicidal thoughts to increase but, after

25  interviewing him, staff did not place him on suicide watch. On December 16, 2020, staff moved

26

27  _____

[1] Notably, it appears Plaintiff may have intended to write November- December 2020, but the Complaint
reflects the year 2021 inadvertently. (*See* Doc. No. 1 at 6-7).

28

him to a different housing unit.  (*Id*. at 8).  On December 20, 2020, Plaintiff filed a grievance

appeal regarding Munoz and Cerda's acts of retaliation.  (*Id.*)  In response to the grievance

appeal, Munoz and Cerda "lied" and stated Plaintiff broke his cell window on September 11,

2020.  (*Id*. at 8).

Plaintiff admits he broke his window on that date to get a custodial response to an inmate

having an emergency medical situation.  (*Id*. at 8).  But because the damage was on the inside of

the cell window, his window was fixed on September 12, 2020.  (*Id*. at 8).  Plaintiff

acknowledges he was sanctioned to 60-days loss of credit, 30-days loss of package privileges, and

$180.00 for breaking his window on September 11, 2020.  (*Id*.at 9).  As relief for these incidents,

Plaintiff seeks monetary damages and a temporary restraining order or a preliminary and

permanent injunction.  (*Id*. at 10).

**B.  Motion for TRO/PI**

In the motion *sub judice*, Plaintiff requests the court to order Munoz and Cerda, or their

agents or employees to:

- return various legal and non-legal books, which he lists by name (Doc. No. 2 at 2);
- "dispose of legal material" related to active cases, which he defines as cases he is litigating or has the right to appeal (*id.*);
- cease and desist conducting cell searching in a manner that disorganizes his legal materials, including dumping legal material and not putting it back (*id.* at 3);
- cease and desist misapplying the definition of "contraband," including but not limited to, legal paperwork, unauthorized source of CCR § 3000, plastic bags holding his legal work, unquantified peanut butter and coffee packs (*id.* at 3-4);
- cease and desist selectively enforcing contraband rules against Plaintiff, including but not limited to clothing, personal hygiene items, products, and book/magazine/newspaper limits (*id.* at 4);
- return his television because he is only on property restriction (*id.*);
- preserve Munoz's body camera footage of cell searches on August 2, 2020 (*id.*);
- preserve body cam footage from numerous other correctional officers in relation to

3

cell searches of Plaintiff's cell (*Id.* at 5).

In argument, Plaintiff claims Munoz is retaliating against him by strictly enforcing contraband rules and frequently searching his cell.  (*Id.* at 13-14).  He states that Munoz confiscated his legal materials and told him he is trying to prevent Plaintiff from redressing his rights in court.  (*Id.* at 7).  Plaintiff alleges the cell search conducted "6 days after PREA[2] Complaint is suspect."  (*Id.* at 8).

## II.  APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a).  Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date.  Local Rule 231(a)-(b) (E.D. Cal. 2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if

---

[2] The Court construes "PREA" to mean a complaint filed under the Prison Rape Elimination Act.  The Complaint makes no reference to Plaintiff filing a PREA complaint.  Plaintiff's motion references a PREA complaint involving two correctional guards alleged romantic interest in each other and does not involve Plaintiff.  (Doc. No. 2 at 11).

4

1    Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in

2    the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an

3    injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

4    Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v.*

5    *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A TRO will not issue if Plaintiff merely shows

6    irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131. The Ninth Circuit

7    also has a second test, holding that a party requesting relief is entitled to a preliminary injunction

8    if it demonstrates: (1) a combination of probable success on the merits and the possibility of

9    irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply

10   in its favor. *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985);

11   *see also McKinney v. Hill*, 925 F.2d at 1470 (9th Cir. 1991) (noting same).

12           Significant, and applicable here, is that a federal court does not have personal jurisdiction

13   over the parties and subject matter jurisdiction over the claim if no defendant has been served in

14   the action. *Zepeda*, 753 F.2d at 727 (9th Cir. 1985) (if no defendant has been served with process

15   then injunctive relief is premature).

16           The injunctive relief an applicant requests must relate to the claims brought in the

17   complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir.

18   2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the

19   court does not have the authority to issue an injunction."). Absent a nexus between the injury

20   claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff

21   any relief. *Id.* at 636.

22           The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner

23   litigants seeking preliminary injunctive relief against prison officials. In such cases,

24   "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to

25   correct the harm the court finds requires preliminary relief, and be the least intrusive means

26   necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr*.,

27   2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA

28   places significant limits upon a court's power to grant preliminary injunctive relief to inmates,

                                                      5

1    and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the

2    bargaining power of prison administrators—no longer may courts grant or approve relief that

3    binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of*

4    *the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).  The court's jurisdiction is "limited

5    to the parties in this action" and the pendency of an action "does not give the Court jurisdiction

6    over prison officials in general or over the conditions of an inmate's confinement unrelated to the

7    claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020).  If a

8    prisoner has been transferred, any sought injunctive relief against the previous facility becomes

9    moot if the prisoner "has demonstrated no reasonable expectation of returning to [the prison]."

10   *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Florence v. Kernan*, 813 F. App'x 325, 326

11   (9th Cir. 2020).  Finally, state governments have "traditionally been granted the widest latitude in

12   the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations

13   omitted).  This deference applies even more strongly when the court is asked to involve itself in

14   the administrative decisions of a prison.  *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v.*

15   *Conner*, 515 U.S. 472, 482-83 (1995).

16                                              **III.  DISCUSSION**

17          Having reviewed Plaintiff's motion and declaration incorporated therein, the undersigned

18   does not find Plaintiff has satisfied his burden to warrant issuance of this extraordinary remedy.

19   As a threshold matter, Plaintiff has not complied with Local Rule 231(d).  There is no showing of

20   actual or attempted notice, and other than requesting the relief, Plaintiff fails to provide any

21   briefing, other than conclusory statements, on the implicated legal issues.  Nor does Plaintiff

22   provide any affidavits attesting to imminent irreparable harm or include a proposed order that

23   includes a provision for bond.

24          Plaintiff essentially takes issue with various actions taken by Defendant Munoz and other

25   correctional officials who are not named in the complaint over a span of time that have resulted in

26   certain of his personal and legal property being removed and/or restricted.  The actions are

27   unrelated from each other, except that Plaintiff labels all of them as being done for retaliatory

28   purposes.  Even if true, Plaintiff has not sufficiently alleged he is at risk of imminent harm.  *El-*

1   *Shaddai v. B. Wheeler*, Case No. CIV-S-06-1898 FCD EFB P, 2008 WL 4736915 *2 (E.D. Cal.

2   Oct. 28, 2008) (denying motion for a preliminary injunction when the prisoner-plaintiff's alleged

3   acts of retaliation were not connected to the reasons he seeks a preliminary injunction and no

4   imminent harm).

5          Further the Court does not have personal jurisdiction or subject matter jurisdiction over

6   defendants, because neither Defendant has received service of process because this case remains

7   subject to the screening provisions of § 1915A.  *See Zepeda v. U.S. Immigr. & Naturalization*

8   *Serv.*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has

9   personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not

10  attempt to determine the rights of persons not before the court.")

11         While Plaintiff complains he has endured routine searches of his cell which has resulted in

12  the confiscation of his property designated as "contraband" in retaliation for him filing inmate

13  grievances concerning his broken cell window and the alleged coverup thereafter, he also

14  acknowledges correctional officials are applying the standard operating rules to him when in the

15  past they apparently had granted him leniency.  (*See* Doc. No. 2 at 4) (noting "selective

16  enforcement" where "administrative indifference is commonly practiced").  In other words,

17  Plaintiff's primarily takes issue with correctional officials enforcing the institution's rules.

18  Plaintiff's claim that he is being impeded in his ability to litigate his legal actions is belied by the

19  fact that he has filed the instant action and accompanying motion.  Further, he admits he has been

20  able to avail himself of the institution's administrative process, thereby showing the alleged acts

21  of retaliation did not defer him from pursuing relief.  Finally, the actions complained of in the

22  motion, although characterized as taken in retaliation, differ from the retaliatory conduct

23  complained of in the Complaint.  *See Pac. Radiation Oncology.*, 810 F.3d at 633.  In particular,

24  the Complaint complains of actions that occurred in November 2020 and the events complained

25  of in the motion concern other events that took place at unspecified times and often involved

26  other correctional officials.  (*See generally* Doc. No. 2). The undersigned finds this is not an

27  extraordinary circumstance warranting the issuance of a temporary restraining order or

28  preliminary injunction and recommends Plaintiff's motion should be denied.

1    Accordingly, it is **ORDERED:**

2    The Clerk of Court shall assign this case to a district judge.

3    It is further **RECOMMENDED**:

4    Plaintiff's motion for a temporary restraining order or a preliminary injunction (Doc. No.

5    2) be DENIED.

6                                **NOTICE TO PARTIES**

7    These findings and recommendations will be submitted to the United States district judge

8    assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen

9    (14) days after being served with these findings and recommendations, a party may file written

10   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

11   Findings and Recommendations."  Parties are advised that failure to file objections within the

12   specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

13   838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

14

15   Dated:    December 8, 2021

16                                               HELENA M. BARCH-KUCHTA
                                                 UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28

                                                 8