1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEVONTE B. HARRIS,                    Case No.  1:21cv01372-JLT-HBK

12              Plaintiff,                 FINDINGS AND RECOMMENDATIONS TO
                                           DENY PLAINTIFF'S SECOND AND THIRD
13        v.                               MOTIONS FOR TEMPORARY
                                           RESTRAINING ORDER OR PRELIMINARY
14   E. MUNOZ, ET. AL.,                    INJUNCTION

15              Defendants.                FOURTEEN-DAY OBJECTION PERIOD

16                                         (Doc. Nos. 15, 16)

17

18        On February 22, 2022, Plaintiff simultaneously filed a second and third motion for a

19   temporary restraining order and a motion for a preliminary injunction seeking to enjoin

20   Defendants from transferring Plaintiff out of "long term restricted housing" or from transferring

21   him to another institution. (Doc. Nos. 15 at 2; 16 at 2 collectively "the Motions").  In the Motions

22   Plaintiff refers to and incorporates by reference the allegations set forth in his First Amended

23   Complaint. (Doc. No. 14, "FAC").  Plaintiff includes a memorandum and his own declaration in

24   support.  (Doc. Nos. 17, 18).  For the reasons discussed below, the undersigned recommends

25   denying the Motions.

26                        **I. BACKGROUND AND FACTS**

27        **A.  Prior Motion TRO/PI**

28        Plaintiff initiated this action proceeding *pro se* by filing a prisoner civil rights complaint

under 42 U.S.C. § 1983 on September 14, 2021. (Doc. No. 1).  He accompanied the filing of his complaint with a motion for a temporary restraining order or a preliminary injunction ("TRO/PI motion").  (Doc. No. 2).  Plaintiff paid the filing fee to proceed in this action.  (Receipt No. CAE1000049286).  Plaintiff is proceeding on his First Amended Complaint filed February 22, 2022, which remains subject to screening.  (Doc. No. 14).

Previously Plaintiff filed a motion for a TRO/PI requesting the Court enter an order enjoining Defendants Munoz and Cerda from various acts including, but not limited to, searching Plaintiff's cell in retaliation, selectively enforcing contraband rules against Plaintiff, and disposing of Plaintiff's legal material.  (Doc. No. 7 at 3-4).  On December 8, 2021, the undersigned issued a findings and recommendations recommending the district court deny Plaintiff's prior TRO/PI motion.  (Doc. Nos. 7, 12).  In denying Plaintiff's TRO/PI motion, the undersigned determined that Plaintiff did not sufficiently allege risk of imminent harm.  (*Id.* at 6).  The undersigned further noted that Plaintiff primarily took issue with the correctional officers enforcing the institution's rules whereas Plaintiff was previously afforded leniency.  (*Id.*).  The district court adopted the findings and recommendations in full.  (Doc. No. 12).

**B. The FAC**

Since the ruling on Plaintiff's first motion for a temporary restraining order or preliminary injunction, Plaintiff filed a FAC.  (Doc. No. 14).  Similar to the initial Complaint, the FAC identifies E. Munoz and J. Cerda as Defendants but adds four more Defendants: E. Silva, identified as the assistant warden; J. Pederson, identified as a correctional captain; K. Matta, identified as a correctional counselor; and, M. Medina, identified as a correctional officer.  (Doc. No. 14 at 1, 3- 4).

In large part, the FAC contains similar allegations to the initial Complaint involving Munoz and Cerda with the theme of retaliation woven throughout.  (*See generally* Doc. No. 14 at 5-11; *see also* Doc. No. 7 at 1-3).  However, unlike the initial Complaint, the FAC clarifies Plaintiff's Prison Rape Elimination Act ("PREA") allegations, adds additional incidents of alleged retaliation, an unrelated claim of not being provided a lunch consistent with Plaintiff's religious diet and the throwing of a tray at him, and a claim related to Plaintiff's need to be

housed in segregated confinement due to other prisoner's dislike of prisoners charged with indecent exposure. (Doc. No. 14 at 12-28).

Plaintiff states PREA requires female correctional officials or staff to announce when they enter a housing unit of all males, or vice versa if the housing unit consists of women.  (*Id.* at 12). Plaintiff states M. Casares, a female, licensed social worker, did not announce her presence in the male dorm and had an opportunity to view Plaintiff showering.  (*Id.*).  Plaintiff alleges Casares, who is not a named Defendant, used the PREA violation to "launch an allegation of indecent exposure against Plaintiff."  (*Id.* at 13).  Following Casares' indecent exposure allegation against Plaintiff, Munoz began retaliatory searches of Plaintiff's cell and strict enforcement of the contraband rules, including removal of Plaintiff's personal property, such as his television and books.  (*Id.* at 13-16).  Plaintiff claims Defendants Cerda and Munoz kept his television an extra two months despite him being eligible for its return on or about September 9, 2021.  (*Id.* at 17).

Plaintiff also cites to another unrelated incident of retaliation involving the rejection of a package he ordered from Walkenhorst for which he had paid expedited shipping.  (*Id.* at 18-20). Plaintiff states he was provided an "access package" while Defendant Medina denied receiving the Walkenhorst package only to later deliver it to Plaintiff after the thirty-day return period had expired. (*Id.* at 20-21).

Finally, Plaintiff alleges that due to his indecent exposure charge, he is threatened by some inmates in general population.  (*Id.* at 24-25).  When he "senses this antagonism towards [him] from elements of the prison population, [he] intend[s] to employ violence, rather than the foolhardy [sic] proposition of informing staff with hopes that they will protect him."  (*Id.* at 25). He alleges Defendants threatened him with placement in "short term restricted housing" if he had any more RVR's while in segregation. (*Id.* at 25).  Plaintiff alleges Defendants know he "decompensates" in a short-term restricted housing cell and previously attempted suicide in such a cell.  (*Id.*).

**C. Instant TRO/PI Motions, Memorandum, and Declaration**

Plaintiff's TRO/PI motions, consisting of 3 and 6 pages respectively, seek an order enjoining correctional officials from transferring him from California State Prison, Corcoran,

long-term restricted housing.  (Doc. Nos. 15 at 2; 16 at 2).  Plaintiff also seeks an order enjoining correctional officials from transferring him to another prison.  (*Id.*).

In his supporting memorandum, Plaintiff states he is considered a sex offender based on his prior indecent exposure convictions and faces risk of attack in prison if he is transferred to general population or short-term restricted housing.  (Doc. No. 17 at 2-3).  In the supporting declaration, Plaintiff states he has been referred to a general population at CSP- Sacramento or Kern Valley State Prison.  (Doc. No. 18 at 5).  Plaintiff claims he does not understand how a transfer order was accomplished because he has another pending RVR.  (*Id.*).  Plaintiff claims he faces a risk of irreparable harm to his personal safety and has not prospects for his release if he is transferred.  (*Id.*).

## II.  APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a).  Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date.  Local Rule 231(a)-(b) (E.D. Cal. 2019).  A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

1    A temporary restraining order is "an extraordinary remedy" and may be issued only if

2 Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in

3 the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an

4 injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

5 Plaintiff bears the burden of clearly satisfying all four prongs.  *Alliance for the Wild Rockies v.*

6 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A TRO will not issue if Plaintiff merely shows

7 irreparable harm is possible – a showing of likelihood is required.  *Id.* at 1131.   The Ninth Circuit

8 also has a second test, holding that a party requesting relief is entitled to a preliminary injunction

9 if it demonstrates: (1) a combination of probable success on the merits and the possibility of

10 irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply

11 in its favor.  *Zepeda v. U.S. Immigr. & Naturalization Serv*, 753 F.2d 719, 727 (9th Cir. 1985);

12 *see also McKinney v. Hill*, 925 F.2d at 1470 (9th Cir. 1991)(noting same).

13    The injunctive relief an applicant requests must relate to the claims brought in the

14 complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir.

15 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the

16 court does not have the authority to issue an injunction.").  Absent a nexus between the injury

17 claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff

18 any relief.  *Id.* at 636.

19    The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner

20 litigants seeking preliminary injunctive relief against prison officials.  In such cases,

21 "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to

22 correct the harm the court finds requires preliminary relief, and be the least intrusive means

23 necessary to correct that harm."  18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr.*,

24 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016).  As the Ninth Circuit has observed, the PLRA

25 places significant limits upon a court's power to grant preliminary injunctive relief to inmates,

26 and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the

27 bargaining power of prison administrators—no longer may courts grant or approve relief that

28 binds prison administrators to do more than the constitutional minimum."  *Gilmore v. People of*

5

1    *the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000).  The court's jurisdiction is "limited

2    to the parties in this action" and the pendency of an action "does not give the Court jurisdiction

3    over prison officials in general or over the conditions of an inmate's confinement unrelated to the

4    claims before it."  *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020).  Further,

5    state governments have "traditionally been granted the widest latitude in the dispatch of [their]

6    own internal affairs."  *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted).  This

7    deference applies even more strongly when the court is asked to involve itself in the

8    administrative decisions of a prison.  *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v.*

9    *Conner*, 515 U.S. 472, 482-83 (1995).

10        Based on the foregoing, the undersigned finds the motion facially deficient and otherwise

11   lacks merit to warrant issuance of injunctive relief.

12                             **III.  DISCUSSION**

13        At the outset, Plaintiff does not certify in writing the efforts, if any, which he made to give

14   notice and reasons supporting why notice should not be required.  Fed. R. Civ. P. 65(b).  Nor does

15   Plaintiff address any of the four factors necessary to warrant an issuance of a TRO.  Thus,

16   facially, the motion is deficient.

17        Nonetheless, in applying the four factors, significant here is Plaintiff's unlikelihood of

18   success on the merits and in ability to show that he is likely to suffer irreparable harm.  Like the

19   initial complaint, the FAC alleges many seemingly unrelated claims, which Plaintiff links

20   together through general claims of retaliation.  Plaintiff seeks a temporary restraining order or a

21   preliminary injunction to enjoin defendants from either removing his current long-term restricted

22   housing status, or from transferring him out of California State Prison Corcoran to any other

23   correctional facility.  Plaintiff says he is at risk if placed in general population due to his sexual

24   predator status stemming from his indecent exposure convictions in 2019.

25        The transfer of a prisoner due to his protected activity can violate a prisoner's First

26   Amendment rights.  *See Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  And filing a lawsuit

27   may constitute protected activity.  *See Thibodeaux v. Belleque*, 320 F. App'x 818, 818-19 (9th

28   Cir. 2009) (determining that retaliation due to a prisoner's threats of bringing lawsuits could

1  create a colorable First Amendment retaliation claim.) Here, however, Plaintiff does not allege,

2  yet alone establish, that his transfer or failure to transfer is "because of" protected activity.

3  Further, as a general rule, prisoners have no expectation they will remain in any particular facility

4  during their confinement and prison officials have broad authority to transfer prisoners from one

5  facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (holding prisoners

6  maintain no expectation that they will be confined in any particular prison); *see also Meachum v.*

7  *Fano*, 427 U.S. 215, 225 (1976) (holding prisoners have no expectation that they will be confined

8  in any particular facility).

9      As to the imminent harm prong, Plaintiff has not shown he is likely to suffer irreparable

10  harm to warrant the extraordinary exercise of immediate injunctive relief to enjoin Plaintiff's

11  transfer. Although Plaintiff believes he is subject to transfer and may face injury based on his

12  prior conviction of indecent exposure, "'[s]peculative injury does not constitute irreparable injury

13  sufficient to warrant granting a preliminary injunction.'" *Mester v. Dickinson*, 2010 WL

14  1658472, *2 (April 23, 2010) (citing Caribbean *Marine Servc. Co. v. Baldrige*, 844 F.2d 668, 674

15  (9th Cir. 1988) (other citations omitted)). A presently existing actual threat must be shown. *Id.*

16  (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v.*

17  *Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998); *Caribbean*

18  *Marine,* 844 F.2d at 674). And Plaintiff presents no evidence that transfer to another correctional

19  institution or status change from long-term restricting housing is imminent. Other courts facing

20  similar requests for injunctive relief to prevent correctional officials from transferring an inmate

21  have recommended denying the motion for similar reasons. *See Blair v. CDCR*, 2016 WL

22  8673037 *2 (E.D. Cal. Dec. 9, 2016) (finding injuries speculative among other reasons); *James v.*

23  *Wong*, 2017 WL 3588027 *3 (E.D. Cal. Sept. 21, 2017); *Jones v. Wong*, 2017 WL 3588027 (E.D.

24  Cal. Aug. 21, 2017) (finding risk of future transfer too speculative to warrant injunctive relief).

25      Accordingly, it is **ORDERED**:

26      1. The Clerk of Court shall correct the docket to reflect the names of the Defendants

27  identified on Plaintiff's First Amended Complaint to include: E. Munoz, J. Cerda, E. Silva, J.

28  Pederson, K. Matta, and M. Medina.

1       It is further **RECOMMENDED**:

2       Plaintiff's motions for a temporary restraining order or preliminary injunction (Doc. No.

3 15, 16) be DENIED.

4                   <u>NOTICE TO PARTIES</u>

5       These findings and recommendations will be submitted to the United States District Judge

6 assigned to the case under the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days

7 after being served with these findings and recommendations, a party may file written objections

8 with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

9 and Recommendations."  Parties are advised that failure to file objections within the specified

10 time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39

11 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12

13 Dated:    April 13, 2022   

14                          HELENA M. BARCH-KUCHTA

15                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28