UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE BERNARD HARRIS<br><br>            Plaintiff,<br><br>    v.<br><br>E. MUNOZ, J. CERDA, E. SILVA, A. PEDERSON, K. MATTA, and M. MEDINA,<br><br>            Defendants. | Case No.  1:21-cv-01372-JLT-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO PERMIT PLAINTIFF TO PROCEED ONLY ON COGNIZABLE FIRST AMENDMENT CLAIMS[1]<br><br>(Doc. No.  14)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Plaintiff Devonte Bernard Harris is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983.  Plaintiff is proceeding on his First Amended Complaint.  (Doc. No. 14, "FAC").  As more fully set forth below, the undersigned finds the FAC states a First Amendment retaliation claim as to Defendants Cerda and Munoz, but no other claims and recommends that Plaintiff be permitted to proceed only on his cognizable claim and all other defendants and claims be dismissed.

////
////

---

[1] This matter was referred to the assigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

Plaintiff filed the initial Complaint in this matter (Doc. No. 1), and simultaneously filed a Motion for Temporary Restraining Order and Preliminary Injunction ("Motion") (Doc. No. 2). The Motion was denied. (Doc. Nos. 7, 12). This Court screened Plaintiff's Complaint, finding that it stated a cognizable claim of First Amendment retaliation as to Defendants Munoz and Cerda and directed service on those Defendants. (*See* Doc. No. 8). After Defendants were served, Plaintiff filed a First Amended Complaint ("FAC") (Doc. No. 14), which added three new causes of action, and simultaneously filed a Motion for a Temporary Restraining Order ("TRO") and a Motion for Preliminary Injunction. (Doc. Nos. 15, 16). The undersigned deemed the FAC the operative complaint. (Doc. No. 21). The Motions for TRO and Preliminary Injunction were denied. (Doc. Nos. 22, 23).

Plaintiff's FAC alleges a series of retaliatory actions by various prison officials at California State Prison Corcoran ("CSP Corcoran") in response to his filing of grievances. Plaintiff names as Defendants Correctional Officer E. Munoz, Correctional Sergeant E. Cerda[2], Associate Warden E. Silva, Correctional Captain A. Pederson, Correctional Counselor K. Matta, and Correctional Officer M. Medina. (Doc. No. 14 at 1-4). Plaintiff's numbering of the claims is somewhat confusing, therefore in the interest of clarity the undersigned assigns its own numbering, indicated in parentheses. At this stage of the proceedings, the undersigned accepts the allegations in the FAC as true.

The first incident giving rise to the FAC (Claim 1) occurred on or about November 2, 2020, after Plaintiff had been returned to his cell from suicide watch. (*Id.* at 5-6).[3] Plaintiff asked Defendant Munoz to submit a canteen slip on his behalf, but Munoz refused and told him to submit it through the mail. (*Id.*). A different correctional officer came and turned in Plaintiff's canteen slip. (*Id.* at 7). When Munoz was performing his next security check in Plaintiff's area, he "knocked the sensor baton against [Plaintiff's] cell door window and cracked the window."

---

[2] Through the Court's E-Service process it has been determined that Defendant Cerda's first initial is J, not E as indicated in the FAC. (*See* Doc. No. 9).

[3] The Court uses the pages numbers that appear on the Court's CM/ECF system as opposed to the page numbers on the FAC.

2

(*Id.*).

Over the next few weeks, Plaintiff requested that maintenance fix his window, and contacted Defendant Cerda for assistance. (*Id.*). Defendant Cerda told Plaintiff that Munoz took responsibility for the broken window, but the window would not be repaired because only the outer layer of the window was cracked, and it was "not a priority." (*Id.* at 7-8). Plaintiff believed Cerda was "covering up" for Munoz. (*Id.* at 8). About three weeks later, Plaintiff filed an inmate grievance regarding Cerda's alleged cover-up of Munoz's actions. (*Id.*).

Plaintiff tested positive for COVID-19 on November 26, 2020,[4] and was moved to an isolation Building. (*Id*). Plaintiff states that Munoz and Cerda learned about Plaintiff's grievance around this time. (*Id.*). Following his return from isolation, around December 15,[5] Plaintiff claims Munoz and Cerda moved Plaintiff's cell assignment to a different cell in a "reclusive corner" of the correctional facility and acknowledged to him that they did so "as a result of [Plaintiff's] administrative appeal." (*Id.* at 8-9). When Plaintiff arrived in his new cell, he noticed that many of the photographs of his friends and family, which previously hung in his old cell, "were ruined." (*Id.* at 9). Munoz later "admitted to the sabotage." (*Id.*). On December 20, 2020, Plaintiff filed "an administrative appeal" regarding Munoz and Cerda's "retaliating against [him][,]" although he does not specify which actions formed the basis of his complaint. (*Id.*).

In response to the grievance, Munoz and Cerda "lied" and stated that Plaintiff broke his own cell window on September 11, 2020. (*Id*. at 8). Plaintiff admits he broke his window on September 11 to get a custodial response to an inmate having an emergency medical situation, but states that the window was fixed the next day. (*Id*. at 8). Plaintiff says that as a result of Munoz and Cerda's false statements he received a Rule Violation Report and was sanctioned to 60 days loss of credit, 30 days loss of package privileges, and $180.00 for breaking his window on September 11, 2020. (*Id*. at 9).

---

[4] It appears Plaintiff intended this date as November 26, 2020, but the Complaint reflects the year 2021.
[5] Again, it appears Plaintiff intended this date as December 15, 2020, but the Complaint reflects the year 2021.

3

The second incident arose on August 18, 2021 (Claim 2), when a female counselor, M. Casares, entered Plaintiff's housing unit without making an opposite gender announcement, as required by the Prison Rape Elimination Act (PREA). (*Id*. at 12). Plaintiff was bathing after working out in the yard, and Casares could see into his cell from where she was standing. (*Id*. at 12-13). Plaintiff infers that Casares saw him bathing through no fault of his own and used the incident as a pretext for filing an indecent exposure complaint against him. (*Id*. at 13). In response, Plaintiff filed his own PREA complaint against Casares. (*Id*.). On August 19, 2021, an Investigative Service Unit officer interviewed Plaintiff regarding his PREA complaint. (*Id*.). On August 24, 2021, during his outdoor exercise period, Plaintiff witnessed Casares and Defendant Munoz speaking briefly. (*Id*.). Fifteen minutes later, Munoz conducted a surprise search of Plaintiff's cell that lasted "several hours" in which he enforced property restrictions that were never previously enforced, including clothing limitations, picture limitations, hygiene limitations, and book limitations. (*Id*. at 13-14). Munoz confiscated various items that Plaintiff was permitted to have in his cell, including his television, legal reference books, calendar, and headphones. (*Id*. at 14-16). Defendant Medina came to pick up the confiscated items and store them. (*Id*. at 16). Munoz told Medina that Plaintiff had filed a retaliation claim against Munoz. (*Id*.). On September 9, 2021, Plaintiff asked Cerda to order Medina to return his television. (*Id*. at 17). Cerda stated that he discovered an additional rule violation report with a property restriction sanction until February 4, 2022 and therefore could not return the television. (*Id*.). On September 9, 2021 one of Plaintiff's prior appeals was granted, overturning the property restriction, but "[n]evertheless Cerda, Munoz, and Medina collaborated to continue withholding [Plaintiff's] television until 11/20/21." (*Id*.)

In another series of incidents spanning from September 15, 2021 to January 27, 2022 (Claim 3), Plaintiff ordered various packages from two delivery services, with which Defendants Medina and Cerda interfered in different ways. On September 15, 2021, Plaintiff ordered a package via expedited shipping from Walkenhorst's and Defendant Medina issued a package rejection notice and returned the package to the sender at Plaintiff's expense. (*Id*. at 18). In early November 2021, a package arrived for Plaintiff at CSP Corcoran, and Defendants Medina and

1 Cerda waited more than 30 days to deliver it to Plaintiff. (*Id*.). On another occasion, Cerda and Medina refused to deliver a package to Plaintiff, claiming he was under property restrictions even though he was not. (*Id*. at 21). These various incidents cost Plaintiff at least $400. (*Id*. at 21).

Finally, Plaintiff describes an incident on November 2, 2021 (Claim 4) involving Defendant Munoz where Plaintiff rejected a lunch that did not conform to his religious diet. (*Id*. at 22). After Plaintiff rejected the meal Munoz "grabbed the lunch off the tray slot, threw it in my cell at me—hitting me in the leg." (*Id*.). Plaintiff filed an excessive force complaint and noted that he feared a retaliatory cell move, building move, or transfer because of filing the grievance. (*Id*. at 23). On January 27, 2022, the Institutional Classification Committee, comprised of Defendants Silva, Cerda, Pederson and Matta, as well as C. Angel[6] convened and voted to suspend Plaintiff's determinate segregation term, over his objection. (*Id*. at 24). Defendants referred Plaintiff for transfer to general population at CSP Sacramento or Kern Valley State Prison. (*Id*. at 26). They also noted that if Plaintiff suffered another RVR he may be ineligible for return to general population and would be placed instead in Short Term Restricted Housing (STRH). (*Id*. at 25). Plaintiff states that "Defendants know I decompensate in the sensory deprivation cells at STRH where I attempted to hang myself on 5/2/18." (*Id*. at 25).

As relief for the incidents, Plaintiff seeks nominal, compensatory, and punitive damages, a temporary restraining order, and preliminary and permanent injunctions. (*Id*. at 27)

## ANALYSIS

**A. Rule 15**

Generally, Federal Rule of Civil Procedure 15 governs the circumstances when a party may amend its pleadings. When a motion is filed within the timeframe set forth in the court's case management and scheduling order, a party is normally entitled to the "liberal amendment procedures afforded by Rule 15." *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 952 (9th Cir. 2006). Rule 15 mandates this Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue

---

[6] C. Angel is not a defendant in this action.

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" leave must be "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962). When considering the *Foman* factors, case law cautions that "prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital, LLC v. Aspen, Inc*. 316 F. 3d 1048, 1052 (9th Cir. 2003).

In this case, Plaintiff is proceeding on his FAC. The time period for filing an amended pleading to which a responsive pleading is required, such as an amended complaint, is "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Because no responsive pleading had yet been filed by Defendants in this matter, Plaintiff filed his amended complaint timely.

**B. Rules 18 and 20**

The Rules permit a complaint to include all *related claims* against a party and permit joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules do not permit conglomeration of unrelated claims against unrelated defendants in a single lawsuit. Unrelated claims must be filed in separate lawsuits.

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

*K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed. Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607

6

(7th Cir. 2007).

In the FAC, Plaintiff seeks to add three new claims that are all factually unrelated. These claims involve distinct incidents, each unrelated to each other and to Claim 1. Claim 1 arises from events that occurred from November to December 2020; it involved Plaintiff filing a grievance against Defendants Munoz and Cerda over their failure to repair a broken window, and Defendants Munoz and Cerda making false allegations against Plaintiff that resulted in him suffering administrative penalties. (Doc. No. 14 at 5-9). Claim 2 arises from events that occurred primarily in August 2021, and involved an incident of alleged indecent exposure, a PREA complaint against M. Casares, and an alleged retaliatory search and confiscation of property by Defendants Munoz and Medina. (*Id*. at 12-17). Claim 3 arises from yet another series of events, taking place from September 2021 to January 2022, involving alleged interference by Defendants Cerda and Medina with Plaintiff's mail packages. (*Id*. at 18-21). Claim 4 arises from events that took place from November 2021 to February 2022, concerning a use of force incident involving Defendant Munoz and the recommendation by several members of the Institutional Classification Committee that Plaintiff be transferred. (*Id*. at 22-26).

The mere fact that all the claims arise from incidents that took place in prison and involve either Defendant Munoz or Defendant Cerda does not establish that they arise from the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 18(a). And although Plaintiff infers a retaliatory motive behind many of the incidents, Plaintiff's allegations lack "factual similarity in the allegations supporting" his claims." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir.2013). Other courts have likewise determined that there must be a "logical relationship" between events in order to find joinder appropriate under Rule 18. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010).

The undersigned observes that Plaintiff is a frequent litigant in the Federal courts and that, as noted above, the joinder rules are "intended not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees." *George*, 507 F.3d at 607. Permitting Plaintiff to join these four, factually distinct claims would be contrary to the intent of the Rules and the PLRA and would risk creating the sort of

morass that confuses jurors and creates undue delay in the judicial process. Accordingly, the undersigned finds that Claim 2-4 are misjoined and cannot proceed in this action. The Court nevertheless addresses the merits of each claim below.

### C. Retaliation

Prisoners have a First Amendment right to file a grievance or civil rights complaint against correctional officials. *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). A retaliatory motive may be shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as direct evidence. *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011). Circumstantial evidence usually includes "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse . . . action were false and pretextual." *Id.* (quoting *Allen v. Iranon,* 283 F.3d 1070, 1077 (9th Cir.2002)) (quotation marks omitted). Mere speculation that a defendant acted out of retaliation is not sufficient. *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

**1. 2020 Incident (Claim 1)**

The Complaint has stated a cognizable retaliation claim under the First Amendment against Defendants Cerda and Munoz. Liberally construed, the FAC sufficiently alleges that Cerda and Munoz, either together or individually, took various adverse actions against Plaintiff. They moved him to an isolated cell, destroyed his property, and falsely blamed him for a broken window, resulting in loss of good time credits and a fine. (Doc. No. 14 at 8-9). The temporal proximity of these incidents to Plaintiff's filing of grievances against both Cerda and Munoz—they occurred within a few weeks of each other—supports the inference that the adverse actions

were motivated by Plaintiff's protected First Amendment Activity. *See Bruce,* 351 F.3d at 1288-89. Further, accepting the allegations in the FAC as true, Munoz admitted that "he and Cerda moved [Plaintiff] as a result of [his] administrative appeal" and Munoz "later admitted to [damaging Plaintiff's property]." (Doc. No. 14 at 9). Taken together, the allegations support a reasonable inference that Defendants' actions were driven by a retaliatory motive. Finally, the undersigned can discern no legitimate penological motive behind destroying Plaintiff's property or falsely accusing him of destroying his cell window. Thus, the undersigned finds the FAC states a claim as to Defendants Cerda and Munoz and he should be permitted to proceed on this claim in this action.

### 2. August-September 2021 Incident (Claim 2)

Plaintiff's second retaliation claim may state a claim, however it is misjoined and cannot proceed in this action. Plaintiff states that on August 24, 2021, Defendant Munoz conducted a search of his cell and confiscated much of Plaintiff's property. (Doc. No. 14 at 13-14). This took place less than a week after Plaintiff filed his PREA complaint against M. Casares, and 15 minutes after Plaintiff saw Casares and Defendant Munoz speaking in the yard. (*Id.* at 13). The close proximity in time between Defendants' protected speech and the adverse action (search and confiscation of his property), as well as the facts inferring coordination between Casares and Defendant Munoz may provide sufficient circumstantial evidence of retaliation to state a claim as to this incident. Because it is misjoined, however, Plaintiff cannot include it in this action and should be directed to file a new complaint on this unrelated claim if he wishes to prosecute it.

### 3. November 2021-January 2022 Incidents (Claim 4)

As noted above, Claim 4 is misjoined. Upon review, it also fails to state a claim of retaliation. Plaintiff alleges he faced retaliation for filing a grievance against Defendant Munoz regarding the November 2021 use of force incident. Specifically, the Institutional Classification Committee, when it met two months after the use of force incident, suspended Plaintiff's determinate segregation term and recommended him for transfer to either general population or another prison. (Doc. No. 14 at 24). Plaintiff fails to plead any facts indicating a connection between the two events. While Plaintiff infers a retaliatory motive in the ICC's actions, the Court

is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council*, 643 F.2d at 624.

Further, as a general rule, prisoners have no expectation they will remain in any particular facility during their confinement and prison officials have broad authority to transfer prisoners from one facility to another. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding prisoners have no expectation that they will be confined in any particular facility). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Wolff v. McDonnell,* 418 U.S., 539, 547-548 (1974). The Complaint is devoid of facts indicating the ICC was not motivated by legitimate correctional goals in its decision, or that there was any connection between Plaintiff's protected First Amendment activity and the ICC's transfer recommendation. Accordingly, the undersigned finds that Plaintiff fails to state a retaliation claim as to this incident.

**D. First Amendment Right to Receive Mail and Fifth Amendment Loss of Property**

    **1. September 2021-January 2022 Incidents (Claim 3)**

Although it may state a First Amendment claim regarding interference with Plaintiff's mail, Claim 3 is misjoined and therefore cannot proceed in this action.

Plaintiff states that, over a period of months, Defendants Cerda and Medina interfered with the delivery of his packages, resulting in delay and loss of property. (Doc. No. 14 at 18-21). Plaintiff recites various instances where his packages were mislaid or delayed and implies unspecified wrongdoing by Cerda and Medina, claiming that their actions "are designed to ensure I incur a $400 something dollar financial loss . . . ." (Doc. No. 14 at 21).

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam); *see also Nordstrom v. Ryan*, 856 F.3d 1265, 1271 (9th Cir. 2017). An unexplained delay in the delivery of a prisoner's mail or packages is sufficient to state a § 1983 claim at the screening stage. *See Grigsby v. Horel*, 341 Fed. Appx. 311, 312 (9th Cir. 2009). Plaintiff alleges in detail various instances where Defendants Cerda and Medina

delayed or prevented the delivery of Plaintiff's incoming mail without adequate justification. (Doc. No. 14 at 18-21). Defendants' actions resulted in Plaintiff's denial of or delayed access to his mail, and Defendants did not proffer any legitimate penological basis for the restrictions. *See O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (prison officials may impose restrictions on mail that further legitimate penological interests, including the prevention of criminal activity and the maintenance of prison security.) Liberally construed, therefore, Plaintiff may state a claim as to denial of his First Amendment right to receive mail. However, because it is misjoined to the original claim deemed cognizable in this action, Plaintiff should not be permitted to proceed on this claim in this action but must file it in a new action should he wish to prosecute it.

To the extent Plaintiff asserts a Fifth Amendment due process claim based on loss of his property, such an action is barred because California provides state prisoners adequate post-deprivation remedies through the Government Claims Act to satisfy the due process clause. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (holding that California has an adequate post-deprivation remedy through the Government Claims Act process.). Accordingly, Plaintiff cannot state a Fifth Amendment Due Process Claim based on the taking of his property.

### E. Statute of Limitations on Plaintiff's Cognizable but Misjoined Claims

In considering misjoined claims, the Ninth Circuit cautions the district courts to conduct a prejudice analysis before dismissing the severed parties, pursuant to Federal Rule of Civil Procedure 21. *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015) (abuse of discretion to dismiss rather than sever claims against improperly joined parties without evaluating the prejudice to the plaintiff of dismissal). The Ninth Circuit expressly noted that such consideration should include "loss of otherwise timely claims if new suits are blocked by statutes of limitations." *Rush*, 779 F.3d at 975 (citation omitted).

No statute of limitations is set out in 42 U.S.C § 1983.  Instead, California's two-year statute of limitations on personal injury claims applies.  Cal. Code Civ. Proc. § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *see also Canatella v. Van De Camp*, 486 F.3d 1128, 1132 (9th Cir. 2007); *Maldanado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004).  Under federal law, civil rights claim like this accrues when plaintiff knows or has reason to know of the injury giving rise to the claim.  *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 926 (9th Cir. 2004).  *See* Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (two-year statute of limitations for personal injury claims; two-year tolling period due to incarceration).  The statute of limitations for bringing a claim under § 1983 in California is tolled during the time a prisoner pursues his administrative remedies and is potentially tolled up to an additional two years if plaintiff is incarcerated for a term of less than life.  *See Moreno v. Thomas*, 490 F. Supp. 2d 1055, 1062 (C.D. Cal. 2007) (finding pro se prisoner's section 1983 complaint timely despite being filed nearly four years after claim arose); *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process."); Cal. Civ. Proc. Code §§ 335.1, 352.1(a).  Under California's test for equitable tolling, a plaintiff must establish "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1204 (9th Cir. 2014) (explaining that federal courts borrow state law equitable tolling provisions, unless they are inconsistent with federal law, and setting forth California's doctrine of equitable tolling).

A search on of the CDCR Inmate Locator website for Plaintiff's records, https://inmatelocator.cdcr.ca.gov/, indicates that Plaintiff was admitted in March 2000 and had a parole eligible date of September 2018.  Therefore, the Court draws the reasonable inference that Plaintiff is incarcerated for a term of less than life, qualifying him for up to two years of tolling under Section 352.1(a), in addition to any period in which he was seeking administrative remedies.  Because Plaintiff's earliest misjoined claim arose in late August 2019, the earliest time that his claim would be barred (not counting administrative tolling) would be August 2023, five months from this date of this order.  While Plaintiff should act swiftly to refile a claim if he so

chooses, the Court finds that he would not be prejudiced by dismissal of the misjoined claims, and that severance is not warranted. *See Rush*, 779 F.3d at 975.

## CONCLUSIONS AND RECOMMENDATIONS

For the reasons set forth *supra*, liberally construing the FAC and accepting the allegations as true, the Court finds the FAC states a cognizable First Amendment retaliation claim against Defendants E. Munoz and J. Cerda (Claim 1) only. Plaintiff fails to state a claim as to his remaining allegations.

Accordingly, it is **RECOMMENDED**:

The District Court permit Plaintiff to proceed on his First Amendment claim against Defendants Cerda and Munoz and all other claims and defendants be dismissed.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   March 23, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE